**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **LUIS TENELANDA,** | **COMPLAINT** |
| Plaintiff, | |
| v. | Case No. 1:26-cv-490 |
| | Judge: |
| **COUNTY OF BUTLER, OHIO;** | |
| **SHERIFF RICHARD K. JONES;** | |
| **SERGEANT CORNEAL ROWE (Badge #2127)** | |
| **c/o BUTLER COUNTY SHERIFF'S OFFICE;** | |
| Defendants. | |

## COMPLAINT WITH JURY DEMAND

Plaintiff Luis Tenelanda ("Mr. Tenelanda"), by and through his attorneys, files this civil rights Complaint against Butler County, Ohio (the "County"), Butler County Sheriff Richard K. Jones ("Sheriff Jones"), and Sergeant Corneal Rowe ("Defendant Rowe"), for an unwarranted physical attack on him while being detained at the Jail.

## NATURE OF ACTION

1. This is a civil rights action brought to redress a violent and racist attack perpetrated by a Butler County Jail corrections officer—Defendant Corneal Rowe—on Plaintiff Luis Tenelanda while he was detained at the County's jail.

2. This action also seeks to hold Butler County and Sheriff Jones, and their Jail, responsible for inadequate training and oversight of staff at Butler County Jail, and for adopting customs, policies, patterns, or practices leading to the brutalization of detainees, including Mr. Tenelanda.

## PARTIES

3. Mr. Tenelanda is originally from Ecuador but lived in the United States for many years.

4. Defendant Butler County is a unit of local government in the State of Ohio. Ohio Revised Code ("ORC") §§ 301–07. It operates the Butler County Jail, ORC § 341, and, through its senior officials, promulgates and implements policies governing detainee supervision for people confined to Butler County Jail. Butler County Jail is the jail operated by Butler County. It contracts with Immigration and Customs Enforcement ("ICE"), of the U.S. Department of Homeland Security, to confine people in civil immigration detention.

5. Defendant Sheriff Richard K. Jones was, at all times relevant to the allegations made in this complaint, the elected Sheriff of Butler County. He acted within the scope of his position and under color of state law, and is sued in his official capacity, which includes responsibility for Butler County Jail.

6. Defendant Sergeant Corneal Rowe is identified by Mr. Tenelanda as the Sergeant (Badge #2127) who perpetrated the violent attack on Mr. Tenelanda. This action is brought against Defendant Rowe in his personal capacity.

## JURISDICTION AND VENUE

7. This action is brought under 42 U.S.C. § 1983 for violations of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction claims for violations of Ohio Revised Code 2307.60(A)(1), and the common law torts of assault, battery, and the intentional infliction of emotional distress, to redress Defendants' deprivation of Mr. Tenelanda's legal rights.

8. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. §1343(a)(3) and (4), and 28 U.S.C. § 1367.

Venue properly lies in this District under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

**FACTS**

9.  On or around the night of Sunday, June 8, 2025, Mr. Tenelanda was sitting in his cell watching soccer and basketball on television during the guard change.

10. Detainees typically get scheduled daily periods of break time ("break") where detainees are released from their cells to exercise or engage in recreational activities.

11. At about 7:30 p.m. Mr. Tenelanda began to hear the other detainees shout and knock on their cell doors, saying that it was time for their break.

12. At about 8 p.m. Mr. Tenelanda heard two female officer guards say that there would be no break.

13. The other detainees continued to knock on their cell doors saying that it was time for break and asking why they weren't getting a break.

14. The two guards continued to say that the detainees were not getting a break.

15. Mr. Tenelanda then joined with the others asking for a break.

16. At about 8:20 p.m., the Sergeant and another female guard came into Mr. Tenelanda's pod (Cell #39).

17. Sergeant Corneal Rowe (Defendant Rowe—Badge # 2127) shouted some insults at Mr. Tenelanda and his cellmate, calling them undocumented Hispanics.

18. Other detainees from other cells recall Defendant Rowe calling Mr. Tenelanda and his cellmates names such as "Illegals," "Mexican son of a bitch," and "Savages."

19. Defendant Rowe then shouted to another cell (Cell #25) to go to bed, while continuing to yell insults. He proceeded to walk over to Cell #25.

20. Mr. Tenelanda walked over to his cell door to figure out what was going on, but the female guard motioned for him to move back.

21. Mr. Tenelanda complied and moved back, and the female guard motioned again to move back further. Mr. Tenelanda complied and shrugged his shoulders to ask why.

22. Defendant Rowe then walked back to Cell #39 and began yelling at Mr. Tenelanda. Mr. Tenelanda did not understand what the Sergeant was yelling.

23. Defendant Rowe then entered the cell and continued to yell at Mr. Tenelanda.

24. From Defendant Rowe's hand gestures, Mr. Tenelanda believed he was being ordered to go to bed.

25. As Mr. Tenelanda moved towards his bed, Defendant Rowe punched Mr. Tenelanda in the stomach, under his ribs. Mr. Tenelanda states the punch was very hard.

26. As a result, Mr. Tenelanda fell back and hit his head and his arm on the metal bunk bed, causing him to pass out.

27. Defendant Rowe failed to contemporaneously prepare an incident report about his use of force, in violation of Butler County Jail's Use of Force policy.

28. At some point, the medical unit was called. When Mr. Tenelanda awoke, he was lying in bed with a headache. Mr. Tenelanda awoke feeling dizzy and nauseous, and was seeing lights.

29. It took about 40 minutes to an hour for the medical person to arrive.

30. Omar, another detainee with an orange uniform, was delivering food and told Mr. Tenelanda to meet the medical unit downstairs.

31. When Mr. Tenelanda arrived at the medical unit, there was a female medical professional who took his pulse and his blood sugar reading. Mr. Tenelanda's blood sugar was elevated, at 380 mg/dL.

32. The female medical professional told Mr. Tenelanda that everything was fine and that he should go back to his cell, although Mr. Tenelanda's stomach continued to hurt.

6

33. While Mr. Tenelanda was returning to his cell, another detainee, Armando Leone Reyes Rodriquez, noticed that Mr. Tenelanda had a cut on his left arm and was bleeding.

34. Mr. Tenelanda had not noticed that his arm was bleeding. The jail officials were there, looking around, and when Mr. Rodriquez said that Mr. Tenelanda was bleeding, the officials called a "lockdown" for everyone.

35. Back in his cell, Mr. Tenelanda went to bed. Mr. Tenelanda noted that his cellmate was still there when he went to sleep.

36. Mr. Tenelanda fell asleep and slept until 3 A.M. When Mr. Tenelanda woke to use the bathroom, he felt nauseous and vomited blood twice.

37. Mr. Tenelanda then noticed that he had a new cellmate. Mr. Tenelanda did not know why the new cellmate had been moved in with him, nor did he know why his former cellmate was moved.

38. Mr. Tenelanda continued to feel very dizzy and very sick in his stomach, causing him to throw up again. Mr. Tenelanda continued to experience terrible pain in his arm.

39. Mr. Tenelanda asked for more medical help, but it was not until the following Tuesday that he was taken to a hospital outside of the jail.

40. On Tuesday, June 10th, Mr. Tenelanda was taken to the hospital where they took blood and urine samples, and X-Rays of his arm and his stomach.

7

41. Mr. Tenelanda was told that his arm was fine and that he had an inflamed stomach.

42. The hospital staff gave him some medicine and the doctor handed Mr. Tenelanda his results.

43. Because Mr. Tenelanda had handcuffs on, the jail official that was with him said, "I'll take those," referring to the results, and took them.

44. When they went back to the detention center, Mr. Tenelanda asked for the hospital papers, but the official said he could not have them. The jail official was white, tall, a bit overweight, with blond hair and green eyes.

45. Mr. Tenelanda's stomach and arm continue to cause Mr. Tenelanda extreme pain. Mr. Tenelanda is still currently unable to bend or to lift his left arm. There is pain from Mr. Tenelanda's elbow to his shoulder at all times. As a result, Mr. Tenelanda has difficulty getting dressed and showering because he cannot use his arm.

46. Mr. Tenelanda observed that there was a phone number in his cell to call and report abuse by ICE. Mr. Tenelanda called twice to report the incident, but when he called the number, no one answered the phone.

47. There is a machine in the jail where detainees can input their number and name in order to make a request for records. Mr. Tenelanda continued to try to obtain a copy of the medical records from the hospital, using the machine,

but no records were produced. When Mr. Tenelanda spoke to an official on duty about the records, he stated that Mr. Tenelanda should try the machine again or make a complaint about the machine.

48. At some point, BCJ staff member took two vials of blood from Mr. Tenelanda, but they never provided Mr. Tenelanda with the results or an explanation of why blood was taken.

49. Mr. Tenelanda did not make a formal complaint about Defendant Rowe because he was worried that filing a complaint would be seen as causing trouble and would prevent him from being returned to his country.

50. Defendants failed to comply with ICE's 2025 National Detention Standards, (the "National Detention Standards"), which mirror the 2016 revision of the separate Performance Based National Detention Standards ("PBNDS"; collectively, the "Standards") in relevant part.

51. Butler County Jail is contractually bound to comply with the Standards to which they agreed when they contracted with ICE to confine people in civil immigration detention. The Standards are designed to ensure that people in ICE custody, including those confined to county jails like Butler County Jail, receive safe detention. An objective of the Standards is to ensure that physical force shall only be used when both necessary and reasonable.

9

52. The Standards require that the use of force in detention facilities is never used as a punishment, that the staff shall attempt to gain a detainee's willing cooperation before using force, and that staff shall use only that amount of force necessary.

53. The Standards require that Detainees subject to use of force shall be seen by medical staff as soon as possible. If the use of force results in an injury or claim of injury, medical evaluation shall be obtained and appropriate care provided.

54. The Standards require ongoing training, to occur annually and at a minimum to include cultural diversity training.

55. The following acts, *inter alii*, are prohibited by the National Detention Standards: "Striking a detainee[] when grasping or pushing him . . . would achieve the desired result; and . . . Using force against a detainee offering no resistance."

56. The Standards require a use-of-force team technique when a detainee must be forcibly moved during a calculated use of force. The National Detention Standards describe that "before authorizing the calculated use of force, a supervisory detention official, a designated health professional, and others, as appropriate, shall assess the situation."

57. In addition, when injury occurs, the staff member must immediately prepare an incident report. The detainee will be referred immediately to a medical staff for an examination.

58. An employee is required to submit a written report no later than the end of his or her shift when force was used on any detainee for any reason.

59. Butler County Jail had a custom, policy, and practice for their use of force on detainees.

60. Defendants' failure to provide adequate practices to ensure safe use of force for Mr. Tenelanda is appalling and conforms with a disturbing pattern and practice of civil rights violations. It is a systemic problem at Butler County Jail. For a specific and detailed example, see pending case *Bayong, et al v. County of Butler of the State of Ohio, et al, 1:20-cv-00989-TSB*, regarding a civil rights violation at Butler County Jail where correctional officers repeatedly assaulted and used racial slurs against Mr. Ahmed Adem and Mr. Bayong Brown Bayong. Defendants have repeatedly taken similar actions (and failed to take preventive action) that result in serious bodily injury and the risk of death to inmates and detainees.

61. Defendants were well aware of the systemic failures regarding excessive force at Butler County Jail. Reports detail numerous incidents of excessive force at Butler County Jail. For many years, Butler County Jail has had the custom,

11

policy, and practice of providing inadequate training regarding the excessive use of force on people confined at Butler County Jail.

62. Defendants Butler County and Sheriff Jones, through Butler County Jail, failed to properly train and supervise the staff at Butler County Jail, which resulted in Defendants failing to provide a reasonable standard of care to Mr. Tenelanda throughout his detention, and violating his civil rights.

## COUNT ONE

### FIFTH AND FOURTEENTH AMENDMENT VIOLATION

### UNDER 42 U.S.C. § 1983 FOR EXCESSIVE FORCE

### (AGAINST DEFENDANT ROWE (Badge #2127))

63. Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

64. Defendants are persons for the purposes of 42 U.S.C. § 1983.

65. At all relevant times, all Defendants were acting under color of state law.

66. The Due Process Clauses of the Fifth and Fourteenth Amendment guarantee the right to be free from the use of unreasonable force for people held in pretrial criminal detention.

67. The constitutional rights of people in civil detention and pretrial criminal detention are at least as great as those of people who have been criminally convicted. Indeed, some courts have recognized the rights of people in civil and pretrial criminal detention to be greater than those of people who have been criminally convicted.

68. The force that Defendant Rowe used on Mr. Tenelanda was objectively unreasonable. Mr. Tenelanda had done nothing to warrant the use of even minimal force, but nevertheless was set up for an unprovoked attack.

69. Defendant Rowe's conduct was harmful and sufficiently serious to reach constitutional dimensions.

70. Defendant Rowe's comments calling Mr. Tenelanda an "Illegal," "Savage," and "Undocumented Hispanic," demonstrate Defendant's culpable state of mind.

71. Defendant Rowe's racist attack is shocking to society's conscience and sensibilities.

72. Defendant Rowe's actions involved the unnecessary and wanton infliction of pain and are incompatible with evolving standards of decency.

73. The force purposefully or knowingly used against Mr. Tenelanda was objectively unreasonable and proximately caused serious and permanent bodily injury, violating Plaintiff's Fifth and Fourteenth Amendment rights.

13

## COUNT TWO

EIGHTH AMENDMENT VIOLATION

UNDER 42 U.S.C. § 1983 FOR EXCESSIVE FORCE

(AGAINST DEFENDANT ROWE (Badge #2127))

74. Plaintiff incorporates all previous allegations.

75. Defendant Rowe acted maliciously and sadistically to cause an unnecessary and wanton infliction of pain on Mr. Tenelanda, which served no legitimate penological purpose.

76. Defendant Rowe intentionally caused the unnecessary and wanton infliction of pain by punching Mr. Tenelanda in his stomach, causing him to slam into the metal frame of his bunk and causing serious injury to his head and arm.

77. Defendant Rowe's actions served no legitimate penological purpose and did not represent a good-faith effort to maintain or restore discipline. Mr. Tenelanda made no aggressive movements or comments before Defendant struck. Mr. Tenelanda was complying with officers before the attack.

78. Nothing justified Defendant Rowe's use of force against this compliant, peaceful detainee—let alone the injurious force Defendant used in punching Mr. Tenelanda.

14

79. Nothing justifies that use of force, which was unnecessary, gratuitous, sadistic, malicious, and objectively unreasonable.

80. Defendant Rowe's use of excessive force caused Mr. Tenelanda to sustain objectively serious injuries.

81. Under the Butler County Sheriff's Office Use of Force policy, corrections officers are limited: "Use of force shall be limited to the amount of force necessary to control a given situation and shall include a continuum of escalating force levels. In no event is physical force used as a punishment. Use of force shall be limited to instances of justifiable self-defense, prevention of self-inflicted harm, protection of others, prevention of riot, discharge of firearm or other weapon, escape or other crime[,] and controlling or subduing an inmate who refuses to obey a staff command or order."

82. The Use of Force policy further provides that use-of-force incidents "shall be documented and reviewed by the jail administrator or designee."

83. Defendant Rowe's blatant disregard of written policy and use-of-force training caused Mr. Tenelanda unreasonable physical, mental, and emotional pain.

84. As a direct and proximate result of Defendant Rowe's unlawful and cruel conduct, Mr. Tenelanda suffered and will continue to suffer economic and non-economic damages for which Defendants is liable, including but not

15

limited to loss of the ability to work and consequent loss of income as well as mental, emotional, and physical pain and suffering.

85. Defendant Rowe's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

## COUNT THREE

FOURTEENTH AMENDMENT EQUAL-PROTECTION VIOLATION

UNDER 42 U.S.C. § 1983 FOR

INTENTIONAL RACE DISCRIMINATION

(AGAINST DEFENDANT ROWE (Badge #2127))

86. Plaintiff incorporates all previous allegations.

87. Defendant Rowe violated Mr. Tenelanda's right to equal protection by assaulting him, as described above, based on his race.

88. Before Defendant punched Mr. Tenelanda into his metal bed, seriously injuring his arm, Defendant denigrated Mr. Tenelanda based on his race.

89. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff

suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including but not limited to lost income as well as mental, emotional, and physical pain and suffering.

90. Defendant's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## COUNT FOUR

CIVIL DAMAGES FOR CRIMINAL ACTS

UNDER OHIO REV. CODE § 2307.60(A)(1)

(AGAINST DEFENDANT ROWE (Badge #2127))

91. Plaintiff incorporates all previous allegations.

92. The conduct complained of above constitutes criminal acts on the part of Defendant Rowe. Such acts give rise to civil liability that is nowhere expressly excluded by law. Defendant's crimes include, but are not limited to,

    a. felonious assault (Ohio Rev. Code § 2903.11(A));

    b. interfering with civil rights (Ohio Rev. Code § 2921.45(A));

    c. dereliction of duty (Ohio Rev. Code § 2921.44(C)(2)-(3)); and

    d. unlawful restraint (Ohio Rev. Code § 2905.03(A)).

17

93. As a direct and proximate result of Defendant's criminal conduct, which showed a spirit of ill-will, hatred, and wanton disregard of Plaintiff's rights, Plaintiff has suffered and will continue to suffer economic and non-economic damages for which Defendant Rowe is liable, including but not limited to lost income, mental, emotional, and physical pain and suffering, and punitive damages.

94. Defendant's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

## COUNT FIVE

INTENTIONAL TORT—ASSAULT

(AGAINST DEFENDANT ROWE (Badge #2127))

95. Plaintiff incorporates all previous allegations.

96. Defendant Rowe's intentional actions caused Plaintiff reasonable apprehension of an immediate harmful or offensive contact.

97. As a direct and proximate result of Defendant Rowe's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant is liable.

18

98. Defendant Rowe's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## COUNT SIX

INTENTIONAL TORT—BATTERY

(AGAINST DEFENDANT ROWE (Badge #2127))

99. Plaintiff incorporates all previous allegations.

100. Defendant Rowe engaged in the above-described actions, intending to cause harmful physical contact. The resulting harmful and offensive physical contact was unlawful, unwanted, and unjustified.

101. As a direct and proximate result of Defendant Rowe's unlawful conduct, Plaintiff suffered and will continue to suffer economic and non-economic damages for which Defendant Rowe is liable, including but not limited to lost income as well as mental, emotional, and physical pain and suffering.

102. Defendant Rowe's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## COUNT SEVEN

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(AGAINST DEFENDANT ROWE (Badge #2127))

103.     Plaintiff incorporates all previous allegations.

104.     In conducting himself as he did, Defendant Rowe either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to Plaintiff.

105.     Defendant Rowe's conduct in punching Plaintiff, causing him to slam his head and arm into the metal frame of his bed bunk, was extreme and outrageous.

106.     Defendant Rowe's statement to Plaintiff, calling him an "undocumented Hispanic," was also extreme and outrageous.

107.     Defendant Rowe's conduct went beyond all possible bounds of human decency and was such that it could be considered intolerable in civilized society.

108.     As a direct and proximate result of Defendant Rowe's unlawful conduct, Plaintiff has suffered and will continue to suffer mental anguish so

serious and of such a nature that no reasonable person could be expected to endure it and for which Defendants are liable.

109. Defendant Rowe's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

## COUNT EIGHT

*MONELL* CLAIM FOR CRUEL AND UNUSUAL TREATMENT AND

UNREASONABLE FORCE.

(AGAINST BUTLER COUNTY and SHERIFF JONES)

110. Plaintiff repeats and realleges the foregoing paragraphs as if set forth herein.

111. The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials, and the Due Process Clause of the Fifth and Fourteenth Amendments guarantees the right to protection from the use of unreasonable force on persons held in immigration or other civil detention.

112. To protect against cruel and unusual punishment and ensure only reasonable use of force, a detention provider must ensure that its staff is adequately trained and supervised.

21

113. The constitutional rights, including the right to protection from cruel and unusual punishment, of people in pretrial detention are clearly established, and any reasonable supervisor at a facility confining people in pretrial detention would be aware that people confined to pretrial detention have the right to be free from cruel and unusual punishment.

114. Butler County and Sheriff Jones adopted, enforced, and acquiesced in a policy, custom, and practice of failing to adequately train and supervise staff at the Butler County Jail.

115. The need for proper supervision and training was obvious and the pattern of constitutional violations was so pervasive that the failure to supervise and train constituted deliberate indifference.

116. As a direct and proximate result of the policy, custom, and practice of failing to adequately supervise and train staff at the Butler County Jail, Mr. Tenelanda was subjected to cruel and unusual punishment and suffered other constitutional injury.

117. Because of these violations of his constitutional rights, Mr. Tenelanda is entitled to compensatory and punitive damages from Butler County and Sheriff Jones under 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

22

118.     WHEREFORE, Plaintiff respectfully requests that the Court:

a. Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and reasonable;

b. Award Plaintiff the cost of this action;

c. Award Plaintiff pre- and post-judgment interest, as permitted by law;

d. Award Plaintiff reasonable attorneys' fees;

e. Declare that:

 i.   Defendants Butler County and Sheriff Jones, through Butler County Jail, have a custom, policy, or practice of failing to adequately supervise and train staff at Butler County Jail, who act with deliberate indifference to detainees' rights; and

 ii.  Defendants caused Plaintiff injuries in violation of the Eighth Amendment right to protection from cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause; and

 iii. Defendants' failure to adequately supervise and train staff in excessive force resulted in physical pain and suffering, severe emotional distress, and permanent physical injury to Mr. Tenelanda.

f.  Grant Plaintiff such other relief as the Court deems appropriate and just.

DATED:  May 18, 2026

Respectfully submitted,

**/s/ Graner S. Ghevarghese**
(D.C. Bar #90012288)
(*pro hac vice* forthcoming)
graner@norrislawgroup.org
(202) 830-1225
Norris Law, PLLC
600 14th Street NW, Suite 500
Washington, D.C. 20005

**/s/ William Froehlich**
(D.C. Bar #90030398)
(*pro hac vice* forthcoming)
whit@norrislawgroup.org
(202) 830-1225
Norris Law, PLLC
600 14th Street NW, Suite 500
Washington, D.C.

**/s/Mark A. Vander Laan**
*Trial Attorney*
Mark A. Vander Laan (013297)
Gabriel A. Davis (0098264)
Angela S. Larsen (0105189)
Ohio Justice and Policy Center
215 E. 9th St. Suite 601
Cincinnati, OH  45202
mvanderlaan@ohiojpc.org
gdavis@ohiojpc.org
alarsen@ohiojpc.org

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable under law.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Court's electronic filing system and sent to all Defendants via U.S. Mail on May 18, 2026.

**/s/Mark A. Vander Laan**
Mark A. Vander Laan (013297)